UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



————————————————————————

STEFANIE A. DAVIS,

        Plaintiff,

    v.

NYS DEPARTMENT OF CORRECTIONS
ATTICA CORRECTIONAL FACILITY P.O.
BOX 149 ATTICA, NY 14011,

        Defendant.

————————————————————————

**DECISION AND ORDER**

10-CV-6641 EAW

## INTRODUCTION

Plaintiff Stefanie A. Davis ("Plaintiff") is an African American woman and a former employee of Defendant New York State Department of Corrections ("Defendant") at the Attica Correctional Facility ("Attica"). She filed the instant action on November 10, 2010, alleging discrimination on the basis of her race and gender and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* (the "NYSHRL"). (Dkt. 1). In sum and substance, Plaintiff alleges that while she was employed as an alcohol and substance abuse counselor at Attica, her supervisor assigned her a disproportionate number of minority and/or behaviorally difficult inmates, and that as a result of complaining about this disproportionate assignment, she was retaliated against.

-1-

Defendant has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that Plaintiff cannot establish a *prima facie* case of discrimination. (Dkt. 26). Plaintiff opposes Defendant's motion and has nominally cross-moved for summary judgment in her favor. (Dkt. 33). Plaintiff has also requested that the Court reopen discovery and issue a subpoena for a former colleague and appoint counsel to represent Plaintiff. (*Id.*). For the reasons set forth below, Defendant's motion for summary judgment is denied as to Plaintiff's claim for retaliation and granted in all other respects. Plaintiff's cross-motion for summary judgment is deemed an opposition to Defendant's motion. Plaintiff's request to reopen discovery and subpoena Jeanine Fitz is denied. Plaintiff's request for appointment of counsel is denied without prejudice.

## BACKGROUND

Plaintiff claims she was previously employed by Defendant at Five Points Correctional Facility ("Five Points"). (Dkt. 26-2 at 11:16). She allegedly made a complaint against Defendant to the New York State Division of Human Rights alleging that "facility people" at Five Points were mistreating her based on her ethnicity and age. (*Id.* at 11:16-22). According to Plaintiff, that complaint was settled and the parties entered into a stipulation of settlement. (*Id.* at 11:23-12:3). As a result, Plaintiff was assigned to Attica. (*Id.* at 12:2-3).

Plaintiff claims that when she first toured Attica, a "Mr. Whiteford" talked to her about Five Points and her relationship with her former supervisor and said "he had heard

things didn't go too well over there." (*Id*. at 12:6-11).   According to Plaintiff, she interpreted this statement as meaning that Defendant's attorney had informed the staff at Attica about her prior complaint and that as a result "they had already placed a judgment on [Plaintiff]." (*Id*. at 12:12-17).

At Attica, Plaintiff was supervised by Brenda Post. (*Id*. at 13:4-5).  Ms. Post was the Alcohol and Substance Abuse Treatment ("ASAT") supervisor and Plaintiff was the sole ASAT program assistant. (*Id*. at 41:4-15).  Mr. Whiteford was the senior correction counselor. (*Id*. at 41:11-13).  Plaintiff testified that she had positive interactions with Ms. Post and Mr. Whiteford during her initial months at Attica. (*Id*. at 14:9-13).  Plaintiff claims that her experience at Attica changed in the middle of February or beginning of March 2009, after she was assigned her own caseload. (*Id*. at 14:16-22).  In sum and substance, Plaintiff testified that she believes Ms. Post and Mr. Whiteford were manipulating the assignment of inmates to treatment groups such that Plaintiff received a disproportionate number of challenging and disruptive inmates. (*Id*. at 14:23-15:15). Plaintiff further testified that her group consisted of mostly African American and Hispanic inmates, while her supervisor's group had a larger number of Caucasian inmates. (*Id*. at 21:15-21).  According to Plaintiff, there were "behavioral issues with the African American men and the Hispanics" due to "gang related, behavioral dynamics." (*Id*. at 25:14-17).

Plaintiff claims that she approached Ms. Post about this purported racial disparity and that Ms. Post denied any awareness. (*Id.* at 24:8-12). As a result, Plaintiff alleges that "some of the dynamics began to change" and she began seeing more Caucasian inmates in her group. (*Id.* at 24:20-25).

Plaintiff claims that in March 2009, she was called into a meeting with Ms. Post and Mr. Whiteford to discuss her concerns about the racial make-up of the treatment groups. (*Id.* at 32:9-14). During this meeting, Mr. Whiteford allegedly informed Plaintiff that he and Ms. Post had nothing to do with assigning inmates to a particular group. (*Id.* at 33:2-7). Also during this meeting, Ms. Post allegedly told Plaintiff that Plaintiff probably had more black friends than white friends. (*Id.* at 34:10-13). Mr. Whiteford and Ms. Post allegedly called Plaintiff a troublemaker and told her she was "causing problems . . . like [she] caused problems at Five Points." (*Id.* at 35:10-12). Plaintiff claims that Mr. Whiteford and Ms. Post wrote up a memorandum memorializing this meeting but the memorandum was inaccurate. (*Id.* at 37:1-25).

Plaintiff testified that after the meeting in March 2009, "they" started increasing supervision and monitoring of her group. (*Id.* at 38:1-6). She also testified that she and Ms. Post no longer had lunch together or walked together and that "[i]t was almost like [Ms. Post] was scared to talk to [Plaintiff]." (*Id.* at 40:14-17). Plaintiff testified that Ms. Post discriminated against her on the basis of her race and gender in the following ways: (1) by assuming that Plaintiff had more black friends than white friends; (2) by working

-4-

with the administration team to assign inmates to treatment groups by ethnicity; (3) by whispering and gossiping about her; and (4) by accusing her of being a troublemaker and telling people at Attica that Plaintiff was trying to sue the people at Five Points. (*Id.* at 42:4-9, 42:16-21, 45:24-46:8, 47:6-19, 48:1-7). Ms. Post consistently maintained that she had nothing to do with the assignment of inmates. (*Id.* at 46:23-25). Plaintiff further testified that Mr. Whiteford discriminated against her by agreeing with Ms. Post in the March 2009 meeting and by stopping speaking to Plaintiff. (*Id.* at 51:22-52:23).

Plaintiff also claims that she had requested to be on the "NAACP board"[1] and that a "Ms. Dolce," Attica's deputy supervisor for programs, would not allow her to attend the meetings. (*Id.* at 57:4-22). Ms. Dolce allegedly told Plaintiff that the "program" was being restructured and its future was uncertain. (*Id.* at 58:4-8).

Plaintiff filed a discrimination charge with the New York State Division of Human Rights on or about July 7, 2008, and filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on or about July 17, 2009. (Dkt. 1 at 3). Plaintiff claims that after she made her EEOC complaint, her office began being searched and she was falsely accused of having brought a cell phone into the facility. (Dkt. 26-2 at 79:7-23). Plaintiff further alleges that Ms. Post started discrediting her to her co-workers and telling people that they should not talk or listen to Plaintiff because

---

[1]    Neither party has explained nor does the record reflect what the "NAACP board" is in this context.

she "makes up things." (*Id.* at 80:1-6). Ms. Post also allegedly wrote that Plaintiff was paranoid. (*Id.* at 80:7-14).

Plaintiff put in for a transfer out of Attica at an unspecified time. (*Id.* at 81:11-18). At a Minorities in Criminal Justice meeting in late 2009, Plaintiff was introduced to Malika Hill from Orleans Correctional Facility ("Orleans"). (*Id.* at 82:25-83:14). Ms. Hill informed Plaintiff that Orleans had an opening in the ASAT program. (*Id.* at 83:21-25). Plaintiff had previously rejected offered transfers to Orleans and to the Albion Correctional Facility. (*Id.* at 84:1-8). Ms. Hill followed up with Plaintiff and offered her a tour of Orleans. (*Id.* at 85:2-11). Plaintiff testified that she decided to take the position at Orleans because she wanted experience working in a medium security facility. (*Id.* at 86:19-22). Plaintiff stayed at the same salary upon transferring to Orleans and her job description did not change. (*Id.* at 87:1-11).

On August 12, 2010, the EEOC issued a Dismissal and Notice of Rights form to Plaintiff, in which it determined that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Dkt. 1 at 17). The EEOC made several findings in support of its determination, including a finding that inmates are assigned to the ASAT program based on release date and from a waiting list that does not identify race. (*Id.* at 18). The EEOC reviewed Plaintiff's evaluations and found that there was no negative feedback and that there were "glowing recommendations stating you are an asset to the facility." (*Id.* at 19).

-6-

Plaintiff filed her federal lawsuit on November 10, 2010. (Dkt. 1). Defendant filed an answer on February 28, 2011. (Dkt. 5). On February 11, 2013, following the close of fact discovery on November 30, 2012, Defendant filed a motion for summary judgment. (Dkt. 21, 26). Plaintiff filed papers purporting to represent a cross-motion for summary judgment on April 4, 2013. (Dkt. 33). This case was transferred to the undersigned on February 21, 2014, without any decision having been rendered on the pending motions. (Dkt. 35).

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Moreover, "a *pro se* litigant should be afforded every opportunity to demonstrate that he has a valid claim." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 762 (2d Cir. 1990) (alteration in original) (internal quotation marks omitted).

## II.   Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on the basis that Plaintiff has failed to establish a *prima facie* case of unlawful discrimination.  Plaintiff's complaint alleges

-8-

that she was harassed on the basis of her sex and "on the basis of unequal terms and conditions of [her] employment," and retaliated against because she complained about discrimination and/or harassment directed toward her. (Dkt. 1 at 4). Reading the allegations of the complaint in the light most favorable to Plaintiff, the Court construes the complaint as setting forth claims for: (1) retaliation in violation of Title VII and the NYSHRL; and (2) disparate treatment in violation of Title VII and the NYSHRL. The Court considers each of these claims below.

### A.     Plaintiff's Retaliation Claim

Notably, although Defendant appears to seek complete summary judgment in its favor, Defendant's motion papers make no mention of Plaintiff's retaliation claim. "It is not this Court's responsibility to do counsel's work for them. . . . If [Defendant] is serious about the motion, it must make the necessary effort." *Murray v. Coleman*, No. 08-CV-6383L, 2014 WL 2993748, at *7 (W.D.N.Y. July 2, 2014). As a result, the Court declines to enter judgment in Defendant's favor as to Plaintiff's retaliation claim while noting that "on a more thoroughly briefed and well-supported motion, summary judgment might be appropriate [on this claim]." *Id.*

### B.     Plaintiff's Disparate Treatment Claim

Plaintiff's disparate treatment claim is based on her allegations that she was assigned a case load with a disproportionate number of African American and Hispanic

inmates.  (Dkt. 1 at 15).   Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination with respect to this claim.

"At the summary-judgment stage, properly exhausted Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008).  "At the first stage of the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Id.*  (quotation omitted).   Title VII and NYSHRL disparate treatment claims are analyzed using the same legal framework. *See  Price v. Cushman & Wakefield, Inc.*, 829 F. Supp. 2d 201, 219 n.15 (S.D.N.Y. 2011).

In this case, Defendant concedes the first two prongs of Plaintiff's *prima facie* case for purposes of its summary judgment motion.  (Dkt. 26-3 at 6).  Defendant argues that Plaintiff cannot establish that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination.  The Court agrees.

With respect to Plaintiff's claim that she was deliberately assigned a disproportionate number of African American and Hispanic inmates who were disruptive, "simply being assigned undesirable work duties . . . [is] insufficient to establish adverse

-10-

employment action, since [it does] not have a material impact on the terms and conditions of plaintiff's employment." *Castro v. City of N.Y.*, No. 10-cv-4898(NG)(VVP), 2014 WL 2582830, at *10 (E.D.N.Y. June 5, 2014) (alterations in original) (quotations and citation omitted); *see also Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (unfavorable schedules or work assignments do not rise to the level of adverse employment actions). As such, even accepting Plaintiff's allegations that African American and Hispanic inmates were more likely to have behavioral issues and were more difficult to counsel, disproportionate assignment of these inmates does not constitute an adverse employment action.

Moreover, Plaintiff has presented no evidence to support her allegations that Defendants assigned her a disproportionate number of African American and Hispanic inmates. The EEOC determined that inmates were assigned to the ASAT program based on release date and that the waiting list from which new group members were drawn did not identify race. (Dkt. 1 at 18). It is within the Court's discretion to consider the EEOC's determination as relevant evidence on a motion for summary judgment. *See Sadki v. Suny Coll. at Brockport*, 310 F. Supp. 2d 506, 517 (W.D.N.Y. 2004) (considering state agency finding because it set forth relevant facts and evidence); *see also Green v. Harris Publ'ns, Inc.*, 331 F. Supp. 2d 180, 191 (S.D.N.Y. 2004) ("The consideration, if any, to be given to EEOC findings is within the sound discretion of the trial judge.").

In her affirmations submitted in opposition to Defendant's motion, Plaintiff simply asserts without supporting facts that, "I believe my former Employer Discriminated Against me Maliciously + Vicariously Causing a Constructive discharge of my State employment + Adverse employment actions [sic]. . . ." (Dkt. 33 at 3). These affirmations are insufficient to establish a *prima facie* discrimination case. *See Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 463-64 (W.D.N.Y. 2009), *aff'd*, 392 F. App'x 887 (2d Cir. 2010) (affidavits that "simply amount to a piling up of hearsay, the affiants' subjective beliefs, and naked allegations, unsupported by any facts . . ." "do not add one iota of admissible evidence in support of plaintiff's claim of . . . discrimination"). Similarly, at her deposition, Plaintiff testified that she believed "a hundred percent" that Ms. Post was involved in assigning inmates, but explained that this belief was based solely on her experiences at other facilities. (Dkt. 26-2 at 42:16-43:2). Plaintiff has not offered any evidence of the procedure that was used to assign clients at Attica, and she testified that different facilities have unique procedures. (*Id*. at 87:12-15). In sum, Plaintiff has not produced evidence from which a rational jury could conclude that she was deliberately assigned a disproportionate number of African American and Hispanic inmates.

Plaintiff also has not identified any other occurrence or incident that qualifies as an adverse employment action. Under Title VII, "adverse employment action" is defined as a "materially adverse change" in the terms and conditions of employment that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sanders v.*

*N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quotations omitted).

Examples include "termination of employment, a demotion evidenced by a decrease in

wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation."

*Id.* (quotation omitted).    In this case, Plaintiff has identified the following negative

incidents that occurred during her employment at Attica:  (1) Ms. Post commented that

Plaintiff probably had more black friends than white friends and Mr. Whiteford agreed;

(2) Ms. Post and Mr. Whiteford stopped talking to Plaintiff and whispered and gossiped

about her, including telling her co-workers that she could not be trusted and writing down

that she was paranoid; (3) Plaintiff's office was searched and she was falsely accused of

having a cell phone; (4) Plaintiff was subjected to increased supervision and scrutiny; (5)

Ms. Dolce prevented Plaintiff from serving on the NAACP board; and (6) Plaintiff was

transferred to Orleans.    None of these incidents rises to the level of an adverse

employment action for purposes of a disparate treatment claim.

    With respect to Plaintiff's claim that Ms. Post made a racially insensitive comment

and that Mr. Whiteford agreed, "verbal abuse is typically insufficient to constitute an

'adverse employment action' because [n]egative or otherwise insulting statements are

hardly even actions, let alone 'adverse actions.'" *Scott v. City of N.Y. Dep't of Corr.*, 641

F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (quotation omitted); *see also Teachout v. N.Y.C.*

*Dep't. of Educ.*, No. 04 Civ. 945(GEL), 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22,

2006) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment.").[2]

Whispering, gossiping, and making negative comments about an employee also do not rise to the level of an adverse employment action because they do not materially change the terms and conditions of employment. "Unfair criticism and other unpleasant working conditions are not adverse employment actions. . . ." *Meder v. City of New York*, No. 05 CV 919 (JG), 2007 WL 1231626, at *4 (E.D.N.Y. Apr. 27, 2007); *see also Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment.") (quotation omitted); *Boyd v. Presbyterian Hosp. in City of N.Y.*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) ("The 'gossips' Plaintiff cites likewise are not adverse employment actions.").

Plaintiff's office having allegedly been searched is also not an adverse employment action. As the EEOC found, "[s]earches are routine due to the facility being a maximum security prison. All areas are searched randomly. . . . All individuals are subject to visual inspection of bags." (Dkt. 1 at 19). There is nothing in the record to

---

[2]  The Court does not read Plaintiff's complaint as setting forth a hostile work environment claim. Any such claim would also plainly fail as a matter of law. A single racially insensitive comment and a handful of criticisms do not rise to the level of a hostile work environment. *See Douglass v. Rochester City Sch. Dist.*, 873 F. Supp. 2d 507 (W.D.N.Y. 2012), *aff'd*, 522 F. App'x 5 (2d Cir. 2013).

support the conclusion that the alleged search materially altered the terms and conditions of Plaintiff's employment.  *See Roff v. Low Surgical & Med. Supply, Inc.*, No. CV033655(SJF)(JMA), 2004 WL 5544995, at *7 (E.D.N.Y. May 11, 2004) ("[P]laintiff's allegation that her vehicle and personal belongings were searched also does not constitute an adverse employment action, as such conduct did not materially change the terms and conditions of her employment.").  Similarly, there is no evidence that having been falsely accused of bringing a cell phone into the facility resulted in any negative consequences for Plaintiff or otherwise changed the terms and conditions of her employment.  *See Boyd*, 160 F. Supp. 2d at 537 (false accusations of errors did not constitute an adverse employment action).

With respect to Plaintiff's testimony that she was prevented from serving on the NAACP board, Plaintiff has not produced evidence supporting the conclusion that not being on this board materially impacted the terms and conditions of her employment.  *See La Marco v. N.Y. State Nurses Ass'n*, 118 F. Supp. 2d 310, 319 (N.D.N.Y. 2000) (being placed on employee moral committee with alleged harasser and removed from employee safety committee "did not work a material alteration to the terms and conditions of [the plaintiff's] employment"); *Lee v. N.Y. State Dep't of Health*, No. 98 CIV. 5712(RMB)(HBP), 2001 WL 34031217, at *17 (S.D.N.Y. Apr. 23, 2001) (being denied permission to serve on a particular committee did not constitute an adverse employment action because plaintiff failed to show an adverse impact on her job conditions).

-15-

Finally, Plaintiff's transfer to Orleans was plainly not an adverse employment action. As a threshold matter, Plaintiff testified that she voluntarily chose to transfer to Orleans to gain experience working in a medium security prison. Voluntary transfers are not adverse employment actions unless they rise to the level of a constructive discharge. *See Chanval Pellier v. British Airways, Plc.*, No. 02-CV-4195, 2006 WL 132073, at *4 (E.D.N.Y. Jan. 17, 2006). Here, there is no evidence in the record that Plaintiff's work environment was so intolerable that an objective person would have felt compelled to leave. In fact, Plaintiff testified that she had turned down offered transfers to other correctional facilities shortly before accepting the offer from Orleans. "Failing to allege some anomalous event or increase in the inappropriate conduct thereafter, the same conduct which was not so intolerable" in November 2009, when Plaintiff declined a transfer, "cannot have been sufficiently intolerable in [December 2009] to constitute constructive discharge. . . ." *Id.* at *5.

Even had Plaintiff's transfer been involuntary, a "pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Adeniji v. Admin. for Children Serv., N.Y.C.*, 43 F. Supp. 2d 407, 426 (S.D.N.Y. 1999) (internal citations omitted). "[T]he mere fact that an employee has been transferred or that his job responsibilities have changed is not in itself sufficient to show an adverse change in working conditions." *Cooper v. N.Y. State Dep't of Human Rights*, 986 F. Supp. 825, 828 (S.D.N.Y. 1997). Plaintiff's transfer

to Orleans did not result in a demotion or pay cut and her job description remained the same. Plaintiff has not produced evidence from which a rational jury could conclude that her transfer to Orleans was an adverse employment action.

Plaintiff cannot establish that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination. Plaintiff thus cannot establish a *prima facie* case of disparate treatment and Defendant is entitled to summary judgment on this claim.

### III.   Plaintiff's Cross-Motion for Summary Judgment

In response to Defendant's motion, Plaintiff filed papers denoted as a motion for summary judgment. (Dkt 33). Upon review of the documents submitted by Plaintiff, it is clear that her papers are mislabeled. Plaintiff specifically states in her papers that she wants the Court to deny Defendant's motion and permit her to have a jury trial; she does not seek entry of judgment in her own favor. (Dkt. 33 at 1). Plaintiff has also submitted affirmations in support of her motion in which she argues that she has established a *prima facie* Title VII case, asks the Court to order a jury trial, and identifies her motion as seeking "summary judgment for a jury trial." (*Id*. at 2-3). In her accompanying memorandum of law, Plaintiff states, "I ask the court through this statement of summary judgment . . . to allow [Plaintiff] to be permitted to have a jury trial decide this case. . . ." (*Id*. at 12).

"Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Castro v. United States*, 540 U.S. 375, 381 (2003).    Courts should recharacterize a *pro se* litigant's motion where it is necessary to protect the *pro se* litigant's rights. *See Santiago v. Stamp*, 303 F. App'x 958, 961 (2d Cir. 2008).

> Moving for summary judgment is not without its risks to the moving party. A motion for summary judgment searches the record, and it is well settled that if such a search reveals that there are no genuine issues of material fact, but that the law is on the side of the *non-moving* party, then summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56.

*Montgomery v. Scott*, 802 F. Supp. 930, 935 (W.D.N.Y. 1992) (quotation omitted).

In this case, *pro se* Plaintiff plainly did not understand the function of serving her own motion for summary judgment and apparently believed it was the appropriate mechanism for opposing Defendant's motion.    The Court has already considered both parties' arguments with respect to Plaintiff's disparate treatment claim and determined that Defendant is entitled to summary judgment.    The Court has also refused to grant summary judgment on Plaintiff's retaliation claim due to Defendant's failure to brief its arguments as to this claim, which is the relief requested by Plaintiff in her submission. One effect of treating Plaintiff's submission as a motion for summary judgment would be to permit the Court to search the record on Plaintiff's retaliation claim and grant judgment in favor of Defendant.    Under these circumstances and in the interest of protecting the rights of the *pro se* litigant, the Court construes Plaintiff's submission as

her opposition to Defendant's motion rather than as a cross-motion for summary judgment.

In her opposition papers, Plaintiff makes two requests of the Court that merit additional discussion. First, Plaintiff requests that the Court issue a subpoena for a "former work-colleague" named Jeanine Fitz. (Dkt. 33 at 14). According to Plaintiff, in January 2009, Ms. Fitz approached her at a conference and told Plaintiff she had heard that Plaintiff caused problems at Five Points. (*Id.*).

This action was filed in November 2010, nearly two years after Plaintiff allegedly met Ms. Fitz. Plaintiff has been aware that Ms. Fitz is a potential witness throughout the entire pendency of this action, but apparently made no effort to subpoena Ms. Fitz or otherwise procure her testimony prior to filing her opposition to Defendant's motion. Moreover, fact discovery in this matter closed on November 21, 2012. (Dkt. 21). The Court would have to reopen discovery to grant Plaintiff's request.

"In deciding whether to reopen discovery, courts consider whether good cause exists. . . . A significant consideration is whether there has already been adequate opportunity for discovery." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011). Plaintiff has failed to establish good cause for reopening discovery in this case. Plaintiff had ample time in which to subpoena Ms. Fitz prior to the close of discovery. Her unexplained failure to do so does not warrant further delay in this matter. The Court therefore denies Plaintiff's request that a subpoena be issued for Ms. Fitz.

-19-

Second, Plaintiff requests appointed counsel. (Dkt. 33 at 15). Plaintiff states that she lacks the financial resources to hire a private attorney. (*Id.*). Plaintiff has made numerous previous requests for appointment of counsel in this matter. (Dkt. 7, 11, 17, 31). As has been explained in denying these previous requests, there is no constitutional right to appointed counsel in civil matters. Instead, in Title VII cases, "in such circumstances as the court may deem just, the court may appoint an attorney for [plaintiff]. . . ." 42 U.S.C. § 2000e-5(f)(1). "District courts exercise substantial discretion in deciding whether to appoint counsel, subject to the [following considerations]": (1) as a threshold matter, whether the plaintiff's position seems likely to be of substance; (2) the plaintiff's ability to investigate the crucial facts; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented; (4) the plaintiff's ability to present the case; (4) the complexity of the legal issues; and (5) any special reason why appointment of counsel would be more likely to lead to a just determination in a particular case. *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003). It is a "threshold requirement" that the plaintiff's position seems likely to be of substance. *Id.* The Court is mindful that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

In this case, the Court is not persuaded at this juncture that Plaintiff's claims are likely to have merit.  The only claim remaining in this action is Plaintiff's retaliation claim and, as set forth above, summary judgment might well have been appropriate on this claim had Defendant submitted a properly argued motion.  Because Plaintiff's claims fail to meet this threshold standard, appointment of counsel is not appropriate in this case. Moreover, consideration of the other relevant factors supports the Court's conclusion. This is a straightforward discrimination case in which discovery has already closed. Plaintiff's submission to the EEOC set forth her position in a cogent manner (*see* Dkt. 1 at 7-14) and Plaintiff has "an extensive career and educational background in humanities, human service and . . . criminal justice" (*Id*. at 8).  Plaintiff appears to be capable of presenting her case to a jury.  Based on the record before the Court, it does not appear that extensive cross-examination will be necessary.   Under these circumstances, appointment of counsel is not warranted at this time, although the motion will be denied without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied as to Plaintiff's claim for retaliation and granted in all other respects.  Plaintiff's cross-motion for summary judgment is deemed an opposition to Defendant's motion and is disposed of as set forth above.  Plaintiff's request to reopen discovery and subpoena

Jeanine Fitz is denied.  Plaintiff's request for appointment of counsel is denied without prejudice.

      SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 12, 2014
      Rochester, New York